## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHENZHEN LINGYI INNOVATION TECHNOLOGY CO., LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**SCHEDULE A DEFENDANTS,**<br><br>Defendants. | Civil Action No.: 26-cv-1438<br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

Plaintiff Shenzhen Lingyi Innovation Technology Co., Ltd. ("Plaintiff") hereby sues the Schedule A Defendants hereto ("Defendants"), alleging as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat the e-commerce stores who trade upon Plaintiff's reputation and goodwill by offering for sale and selling unauthorized and unlicensed products, mainly including phone cases and mobile device accessories, using infringing and derivative versions of Plaintiff's federally registered copyright VA 2-466-683 (the "Infringing Products"). Defendants operate on the same marketplace platform - Temu, creating e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and/or selling Infringing Products to unknowing consumers. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their infringing operation.

1

2. Plaintiff is forced to file this action to combat Defendants' infringement of its federally registered copyright as well as to protect unknowing consumers from purchasing Infringing Products over the Internet.

3. Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, diminished goodwill and brand confidence, damage to Plaintiff's reputation, damage to Plaintiff's creative content, and loss of exclusivity in its valuable copyright rights as a result of Defendants' actions and seeks injunctive and monetary relief.

**PARTIES**

4. Plaintiff, Shenzhen Lingyi Innovation Technology Co., Ltd., is an innovative technology company specializing in premium composite-material consumer electronics accessories and mobility gear. The company is headquartered at 12F, Block C, Central Avenue Building, Xixiang Blvd West, Bao'an District, Shenzhen, China. Plaintiff operates globally under the brand name "PITAKA" and sells its products in more than 120 countries and regions, including through official brand websites, Amazon marketplaces, major e-commerce platforms, global distributor networks, and retail electronics stores and branded retail partners. Plaintiff's vertically integrated business model combines proprietary design, in-house production, global distribution, multilingual customer support, and international logistics infrastructure.

5. Plaintiff operates as a global direct-to-consumer (DTC) brand with more than 200 employees, over half of whom are engaged in research and development. Plaintiff's multidisciplinary team includes: materials engineers, product designers, intellectual property professionals, supply chain specialists, quality control experts, and international e-commerce and marketing personnel. Plaintiff maintains its headquarters, research, development, and

manufacturing facilities in Shenzhen, China, while also operating overseas branches in Hong Kong and Japan.

6.      PITAKA is built upon a philosophy of combining advanced material innovation with minimalist design. By integrating cutting-edge engineering, premium materials, and thoughtful aesthetics, Plaintiff is dedicated to providing consumers with lightweight, functional, and visually sophisticated products that enhance everyday life. PITAKA products are distinguished by their use of high-performance aramid fiber woven materials, precision-engineered structural design, proprietary magnetic ecosystem integration, ultra-lightweight construction, and premium original aesthetics.

7.      Plaintiff's mission is to transform every everyday carry item into a seamless bridge connecting individuals with the people and things that matter most. Plaintiff serves a global audience of premium consumer electronics users, primarily urban professionals, business executives, technology enthusiasts, material and design aficionados, and Apple, Samsung, and Huawei flagship device users.

8.      Plaintiff is the sole owner of United States copyright Reg. No. VA 2-466-683 (hereinafter "Plaintiff's Copyright" or "Copyright-in-Suit"). *See* **Exhibit A**. A true and correct copy of Plaintiff's Copyright registration is attached as Exhibit A.

9.      Plaintiff's Copyright includes a 2D work. *See* **Exhibit B**.

10.     Plaintiff's Copyright encompasses the original design pattern titled "Sunset" and "Moonrise", which appear on Plaintiff's flagship phone case product line. *See* **Exhibit B**.

11.     Plaintiff's Copyright was developed through substantial investment in materials science, structural engineering, and aesthetic design, and is legally protected under the copyright laws of the United States and China.

12. Since its founding, Plaintiff has devoted substantial time, effort, and resources to the creation, design, commercialization, and protection of products incorporating Plaintiff's Copyright.

13. Plaintiff has made significant financial investments in the development, protection, and promotion of Plaintiff's Copyright, including but not limited to research and development expenses, professional materials engineering, design efforts, copyright registration, customs recordation with U.S. Customs and Border Protection, and extensive digital marketing efforts.

14. Plaintiff currently owns fourteen (14) U.S. patents and four (4) registered copyrights in the United States. In addition, all registered copyrights have been recorded with U.S. Customs and Border Protection (CBP), establishing a comprehensive intellectual property protection framework extending from rights registration to border enforcement. The Copyright-in-Suit is one of Plaintiff's four registered U.S. copyrights.

15. Plaintiff serves a global audience of premium consumer electronics users, primarily individuals aged 22–45 with medium-to-high purchasing power who appreciate minimalist design, advanced technology, and premium craftsmanship.

16. PITAKA's primary sales channels of products embodying Plaintiff's Copyright include Amazon USA, Best Buy USA (online and retail stores), micro center retail locations; official DTC websites, and authorized distributors and retail partners. These channels provide consumers worldwide with convenient access to PITAKA products. Plaintiff's target customers for products incorporating Plaintiff's Copyright include urban professionals, business executives, technology enthusiasts, Apple, Samsung, and Huawei flagship device users, and minimalist lifestyle advocates.

17. Plaintiff places significant emphasis on long-term global brand development and allocates dedicated resources toward overseas brand growth, continually allocating resources to update its product portfolio and integrate customer feedback to maintain the relevance and quality of its

4

offerings. Plaintiff's North American annual revenue currently exceeds USD $13 million, and Plaintiff consistently allocates approximately 8% of annual revenue toward brand development initiatives, including digital advertising, search engine marketing, social media campaigns, influencer partnerships, public relations, and retail channel development.

18.     Plaintiff and the PITAKA brand are well-known throughout the industry and elsewhere. Plaintiff actively participates in international technology exhibitions such as CES and collaborates with leading technology media outlets and influencers to strengthen brand awareness and consumer engagement. In addition, Plaintiff continuously invests in offline retail expansion, localized customer support services, and enhanced consumer experiences to strengthen brand loyalty and market position within the premium electronics accessories sector.

19.     Plaintiff has expended substantial time, money, and other resources in producing, advertising, and otherwise promoting Plaintiff's Copyright and products thereof. Over time, Plaintiff has invested heavily in the Plaintiff's Copyright and respective products.

20.     The above U.S. registration for the Copyright-in-Suit is valid, subsisting, and in full force and effect. *See* **Exhibit A**.

21.     Plaintiff's Copyright has gained significant recognition for its distinctive elements, design, and features. As a result, Plaintiff's Copyright and the related products have come to be regarded by consumers as quality works originating from Plaintiff. Over time, Plaintiff's Copyright and the related products have attracted substantial market attention, which appears to have led Defendants to imitate Plaintiff's Copyright.

22.     Plaintiff's copyrighted work has achieved strong commercial success, reflected in the growth of Plaintiff's North American annual revenue from approximately USD $7 million to USD $13 million over the past three years, and broader international recognition, reinforcing the

goodwill and creative value embodied in Plaintiff's works. This sustained growth demonstrates strong consumer recognition of Plaintiff's, and of the PITAKA branded, products and reflects the continued expansion and success of the PITAKA brand and products embodying Plaintiff's Copyright.

23.     Over the years, Plaintiff's business involving products embodying the Plaintiff's Copyright has experienced sustained and significant growth, indicating strong market recognition and ongoing brand cultivation.

24.     Plaintiff places substantial importance on intellectual property protection, actively monitoring marketplaces and protecting its intellectual property rights through infringement reporting, customs recordation programs, platform enforcement actions, and litigation. These measures aim to safeguard Plaintiff's reputation and associated goodwill of Plaintiff's works, including Plaintiff's Copyright.

25.     Plaintiff became aware of Defendants who also started to sell products embodying or substantially identical to the Copyright-in-Suit. As such, Plaintiff filed this action to combat these Seller Aliases listed on Schedule A who are harming Plaintiff by offering to sell, selling, advertising, and/or shipping unlicensed products utilizing the Copyright-in-Suit.

26.     The influx of and widespread use of infringing and derivative copies of Plaintiff's Copyright on the exact same or substantially similar products has led to a sharp drop in revenue and erosion of Plaintiff's market position.

27.     As a direct result of Defendants' infringement, Plaintiff has suffered and continues to suffer significant losses, including but not limited to: (a) substantial lost revenue and profits from diverted sales due to Defendants' unauthorized, lower-priced competing products; (b) wasted advertising and promotion expenditures not fully realized due to Defendants' illicit activites; (c) the

destruction of valuable licensing opportunities; (d) substantial and ongoing damage to the reputation and goodwill associated with Plaintiff's Copyright and the PITAKA brand in general; and (e) the incurrence of considerable costs in enforcing Plaintiff's intellectual property rights, including customer service and reputation management costs.

28.     This infringing behavior by Defendants severely impacts Plaintiff's copyright rights and undermines the fair competition environment in the market. The sales of Plaintiff's products embodying the Copyright-in-Suit have dropped significantly and Plaintiff's market share has been illegally eroded.

29.     The infringing behavior of these Seller Aliases has diminished Plaintiff's copyright rights and resulted in loss of exclusivity and control of creative content. Plaintiff has not been able to realize the return of investment in the Copyright-in-Suit.

30.     Plaintiff has lost control over the rights in the Plaintiff's Copyright, lost Plaintiff's and Plaintiff's products' reputation, the associated goodwill of Plaintiff's Copyright, and the ability to exploit the protected work. Plaintiff has also lost profit, market share, and sales volume. Based upon Plaintiff's annual North American revenue of approximately USD $13 million, its ongoing marketing expenditures, and commonly recognized damage methodologies, Plaintiff estimates that the total direct and indirect economic damages caused by the unauthorized use of the Copyright-in-Suit exceed $3,000,000.00.

31.     Defendants leverage platform traffic and offer Infringing Products at substantially lower prices than genuine PITAKA products, thereby diverting consumers, appropriating PITAKA's goodwill, and capturing traffic associated with PITAKA's proprietary brand keywords, causing Plaintiff to lose significant market share and incur additional costs to compete with the price-erosion and consumer confusion.

32. Plaintiff has not entered a contract with or licensing agreement with Defendants for the Copyright-in-Suit. Defendants are not authorized sellers of products bearing or otherwise using Plaintiff's Copyright.

33. Defendants are partnerships, individuals, and/or unincorporated associations operating as seemingly fictitious seller aliases on the Temu platform who target sales to Pennsylvania residents by setting up and operating interactive "storefronts" under aliases via online retail website(s). *See* **Exhibit C**.

34. Defendants target Pennsylvania consumers by advertising, offering to sell, and standing ready, willing and able to sell and ship, and upon information and belief, do sell and ship, Infringing Products to the United States, including Pennsylvania, utilizing infringing and derivative copies of Plaintiff's Copyright. *See* **Exhibit B**.

35. Based on the seller alias names and research of Defendants, Defendants likely reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. As a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). *See* **Exhibit C**.

36. A search of Defendants' purported addresses (if any) via Google do not return the same fictitious alias names nor purported business names, respectively. *See* **Exhibit C**.

37. Defendants' interactive sites are in English, accept U.S. Dollars, and affirmatively display Pennsylvania as a sale and shipping destination. *See* **Exhibit B.**

38. Defendants operate one or more e-commerce stores under seller aliases listed in Schedule A. Through fictitious seller aliases and the anonymity allowed by the marketplace platform,

Defendants purposely conceal their true identity and the full scope of their operations. *See* **Exhibit C**.

39.     Defendants have the opportunity to operate under a proper individual, partnership, or entity name, but Defendants willfully choose to operate under fictitious seller aliases.

**DEFENDANTS' INFRINGING CONDUCT**

40.     While the seller aliases (or Defendants) alone may appear as some small-time infringers, the actions of Defendants are of enormous detriment and coordinated.

41.     The infringement empire Defendants participate in and take advantage of is a $500+ ***Billion*** Dollar industry. The U.S. Department of Homeland Security recognizes this serious threat posed by Defendants, detailing the expansive nature as seen below (*See* **Exhibit E**):



42.     Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit D**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

43.     "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party

sellers" is necessary." **Exhibit E**, Combating Trafficking in Counterfeit and Pirated Goods prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id*.

44. Based on the limited information available and Google research, Defendants appeared to engage in fraudulent conduct when registering the seller aliases by providing false, misleading and/or incomplete information to e-commerce platform(s) to prevent discovery of their true identity, location, and/or the scope of their e-commerce operations. Notably, a significant number of Defendants disclose only "N/A" as their address and "China" as their sole identifying information when required to make merchant disclosures, confirming their deliberate concealment of identity. *See generally* **Exhibit C**.

45. Defendants have the ability to quickly and easily change e-commerce store data, including but not limited to titles, descriptions, images, videos, Date First Available, and other product description information.

46. Defendants incorporate and use infringing and/or derivative copies of Plaintiff's Copyright on at least their respective product pages, seller pages, advertisements, product packaging, and/or products themselves. *See* **Exhibit B**.

47. The e-commerce stores operating under the seller aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of products embodying Plaintiff's Copyright.

48. Defendants' Infringing Products are so substantially identical to Plaintiff's Copyright that consumers themselves recognize and acknowledge the copying, referencing Plaintiff's PITAKA

brand. Verified purchaser reviews of similar products appearing directly on Defendants' Temu product listings explicitly identify Plaintiff by name in connection with the Infringing Products. For example, a verified purchaser review on one of Defendant's listing states that the infringing product "[f]its like a glove! Looks and feels almost exactly like the Pitaka…" *See* **Exhibit B** p. 82. Another verified purchaser review on a related listing states: "I find it close to similar to the real Pitaka cell phone covers that are available for $60 on Amazon…but for the price aspect these are good." *See* **Exhibit B** p. 86. These admissions by consumers confirm that the Infringing Products are designed to, and do, evoke Plaintiff's Copyright and Plaintiff's genuine products in the minds of ordinary purchasers — further evidencing the substantial similarity between the Infringing Products and Plaintiff's Copyright, the marketplace harm, and the willful nature of Defendants' copying. *See* **Exhibit B**.

49.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies as Plaintiff. For example, Defendants facilitate sales by designing the e-commerce store(s) operating under the seller aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers of authorized products embodying Plaintiff's Copyright. *See* **Exhibit B**.

50.     Defendants appear to use fictitious name(s) to keep selling despite Plaintiff's actions.

51.     Defendants have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment. In fact, financial records from similar Schedule A cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis, and upon notice of a lawsuit, to avoid paying any judgment ordered by a court of law in the United States.

52. Joinder of Defendants is proper because Defendants' illicit actions arise out of the same transaction, occurrence, or series of transactions or occurrences, or alternatively, because Plaintiff asserts any right to relief jointly or severally.

53. Defendants all use the same or substantially the same infringing and/or derivative uses of Plaintiff's Copyright, directing consumers to the same or substantially similar infringing products - establishing a logical relationship.

54. Defendants are involved in, review, and/or are in communication with one another via WeChat or QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings and aliases - further establishing a logical relationship amongst Defendants.

55. Defendants' Infringing Products appear identical or substantially similar and manufactured by and come from common source(s) - further establishing a logical relationship amongst Defendants.

56. Defendants, in a virtually identical manner, attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious seller aliases and providing no further, credible identifying information - further establishing a logical relationship amongst Defendants. *See* **Exhibit C**.

57. Defendants, in a virtually identical manner, utilize the same channel of trade, in the same time period, with the same or substantially the same infringing and/or derivative uses of Plaintiff's Copyright, on the same or substantially similar products - further establishing a logical relationship amongst Defendants.

58.  Defendants' Infringing Product listings, including images, titles, and/or descriptions, appear substantially similar - further establishing a logical relationship amongst Defendants. In particular, Defendants' listings overwhelmingly employ the same colorway terminology — "Sunset" and "Moonrise" — that is characteristic of and associated with Plaintiff's genuine products and which are drawn directly from the terminology used in Plaintiff's own copyright documentation and marketing materials.

59.  Defendants take advantage of a set of circumstances - the anonymity and mass reach the internet affords - to sell Infringing Products, all from across international borders, while their listings are in English and accept USD - further establishing a logical relationship amongst Defendants.

60.  Defendants understand that their ability to profit through fictitious internet stores is enhanced as the number of aliases increase, even though each alias may not all engage in direct communication or coordination - further establishing a logical relationship amongst Defendants.

61.  Questions of fact common to all Defendants will arise inherently due to their relatedness and/or logical relationship, identical anonymous nature and foreign status – requiring the same methods to investigate, uncover, and collect evidence about infringing activity, and based upon Defendants' same or substantially the same infringing and/or derivative use of Plaintiff's Copyright on the same or substantially the same Infringing Products – requiring the same legal and factual infringement analysis and damage consideration. *See* **Exhibits B-C**.

62.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill and reputation associated with Plaintiff's Copyright and the destruction of the legitimate market sector in which they operate.

63. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods and/or creative works, (ii) causing an overall degradation of the value associated with Plaintiff's Copyright and respective products therein, and (iii) increasing Plaintiff's overall cost to market and educate consumers about its products embodied in Plaintiff's Copyright.

64. Defendants' use of the Plaintiff's Copyright in connection with the advertising, distribution, offering for sale, and/or sale of Infringing Products, including the sale of Infringing Products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

65. Defendants' infringing and/or derivative use of Plaintiff's Copyright have caused financial loss to Plaintiff.

66. Defendants will continue to advertise, distribute, sell, and/or offer for sale products under Plaintiff's Copyright, unless preliminarily and permanently enjoined.

**JURISDICTION AND VENUE**

67. This is an action for infringement of the Copyright-in-Suit arising under 17 U.S.C. §501.

68. This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, et seq., under 28 U.S.C. §§ 1331 and 1338(a), (b).

69. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Pennsylvania, through at least the fully interactive commercial Internet stores operating under the Seller Aliases, where Defendants advertise, display, offer to sell, and stand ready, willing and able to, and upon information and belief, do sell and ship Infringing Products

14

to residents within the Western District of Pennsylvania. *See* **Exhibit B**. When setting up their online marketplaces, each Defendant affirmatively chose the United States, including Pennsylvania, as a destination to sell and ship Infringing Products. As a result, Defendants have purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their copyright infringement activities at the state through their own affirmative actions; Plaintiff's injuries stems from the Defendants' forum-related activities of advertising, offering to sell, selling, and/or shipping Infringing Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

70. Pennsylvania also authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons. Stat. § 5322 (a). Defendants are systematically directing or targeting their business activities at consumers in the United States, including Pennsylvania, through the Internet platform under the Seller Aliases, affirmatively choosing to offer for sale, sell, and/or ship Infringing Products in and to Pennsylvania, where consumers in the United States, including Pennsylvania, can and do view Defendants' Infringing Products listings, communicate with Defendants regarding their respective Infringing Products, place orders for Defendants' Infringing Products, and ship Defendants' Infringing Products to United States addresses, including Pennsylvania. *See* **Exhibit B**. Despite being from a foreign nation, Defendants' e-commerce stores are made to confuse consumers that they and/or their products originate in the United States, and the stores are in English and accept USD. *See* **Exhibit B**. The level of interactivity is high, where consumers of Pennsylvania can: communicate to Defendants about Infringing Products, view the Infringing Products, purchase the Infringing Products, and ship the Infringing Products to their respective Pennsylvania addresses. Defendants, through anonymous Seller Aliases, utilize an online platform for the sole purpose of

conducting business transactions, as described above. The Internet webpages owned and operated by Defendants, as described above, are purely commercial in nature. The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Pennsylvania.

71. Alternatively, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendants' Infringing Product listings and based on the Seller Aliases being of foreign origin, Defendants are foreign entities, individuals, or unincorporated associations not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

72. Venue in the Western District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of infringement in and have significant contacts within this District – as described above, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, advertising, and/or shipping the Infringing Products to this District.

73. Based on information found on Defendants' Infringing Product listings and based on the Seller Aliases themselves, Defendants are foreign entities or individuals, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

74. Further, venue is proper in this district under 28 U.S.C. § 1400 because Defendants are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

## COUNT I
## INFRINGEMENT OF PLAINTIFF'S COPYRIGHT

75. Plaintiff hereby re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

76. Plaintiff is the true and correct owner of Plaintiff's Copyright. *See* **Exhibit A**.

77. Plaintiff has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to Plaintiff's Copyright.

78. Plaintiff's Copyright is an original work.

79. Under 17 U.S.C. § 106, Plaintiff has the exclusive rights and privileges to reproduce, prepare derivative works, distribute copies, and import copies into the United States, of the Plaintiff's Copyright.

80. Defendants infringed Plaintiff's exclusive copyright by creating infringing and/or derivative works, copying, displaying, advertising, and/or distributing works to the public utilizing or based upon Plaintiff's Copyright in violation of 17 U.S.C. § 106, as seen in **Exhibit B**.

81. Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging, incorporate and copy Plaintiff's Copyright.

82. Defendants' copying constitutes improper appropriation of Plaintiff's Copyright.

83. Defendants' Infringing Products, Infringing Product listing pages, and/or Infringing Product packaging are unlawful copies and/or derivatives of Plaintiff's Copyright.

84. Defendants had access to Plaintiff's Copyright. Plaintiff's products embodying the Copyright-in-Suit are widely and publicly available for purchase in the United States through Amazon USA, Best Buy USA, micro center retail locations, and Plaintiff's official direct-to-consumer websites, and have been so available for years. Plaintiff's PITAKA-branded products incorporating the Copyright-in-Suit are prominently featured on Amazon's marketplace, making Plaintiff's Copyright readily accessible to any party engaged in the online phone case market. Furthermore, verified purchaser reviews on Defendants' own Temu listings explicitly reference PITAKA by name and directly compare Defendants' Infringing Products to Plaintiff's genuine products, confirming that Defendants, or their suppliers, were aware of Plaintiff's Copyright prior to and during the sale of the Infringing Products. Defendants' products could not have replicated the distinctive works without prior access thereto. *See* **Exhibit B**.

85. Due to Defendants' infringing behavior as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's Copyright.

86. Defendants have been and are now actively infringing the Copyright-in-Suit in the State of Pennsylvania, in this judicial district, and other jurisdictions in the United States by displaying, advertising, selling, and/or offering to sell products utilizing and/or under derivative and/or infringing copies of the Copyright-in-Suit.

87. Upon information and belief, Defendants' conduct constitutes willful and direct copyright infringement. The substantially identical nature between Plaintiff's Copyright and infringing products and/or images used in advertising or displaying or packaging the products sold by Defendants further evidences the willful and direct infringement by Defendants. The use of fictious

seller aliases with incomplete and/or false information further evidences the willful nature of the infringement.

88. Due to Defendants' acts of infringement, Plaintiff has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

89. The harm caused to Plaintiff is irreparable.

90. Upon information and belief, Defendants had actual or constructive knowledge of Plaintiff and/or Plaintiff's Copyright before and/or during Defendants' advertising, offering for sale, and/or sale of Infringing Products.

**COUNT II**
**VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT**

91. Plaintiff re-alleges and incorporates herein by reference, as if fully set forth herein, the allegations contained in the preceding paragraphs of this Complaint.

92. Upon information and belief, Plaintiff alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of Plaintiff's Copyright. Such conduct included, without limitation, creating derivative works and/or advertising, offering for sale, and/or selling products under such infringing and/or derivative works that Defendants knew, or should have known, were not authorized to be published by Defendants.

93. Upon information and belief, Plaintiff alleges that Defendants are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants profited in connection with the Infringing Products and advertising of infringing and/or derivative copies of Plaintiff's Copyright, and were able to supervise the distribution, broadcast, and publication of the Infringing Products.

94. By reason of the Defendants' acts of contributory and vicarious infringement, Plaintiff has suffered general and special damages in an amount to be established at trial.

95. Due to Defendants' acts of copyright infringement as alleged herein, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Plaintiff's rights in Plaintiff's Copyright.

96. Upon information and belief, Defendants have committed acts of copyright infringement, as alleged above, which were willful or intentional.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against each Defendant as follows:

a. Entry of temporary, preliminary and permanent injunctions, pursuant to 17 U.S.C.§ 502(a) and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell Infringing Products and/or Plaintiff's Copyright.

b. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplace Temu, identify any e-mail address(es) known to be associated with Defendants' respective Seller IDs and Seller Aliases, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, advertising, offering for sale, and/or sale of Infringing Products and/or Plaintiff's Copyright.

c. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to

the online marketplace Temu, permanently remove any and all listings offering for sale or advertising Infringing Products and/or Plaintiff's Copyright via the e-commerce stores operating under the Seller IDs and Seller Aliases, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, advertise, display, offer for sale and/or sell Infringing Products and/or Plaintiff's Copyright.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplace Temu, immediately cease fulfillment of and sequester all goods of Defendants or other Seller under a Seller ID offering for sale the Infringing Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order requiring Defendants to account to and pay Plaintiff actual damages and/or Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504.

f. Entry of an Order finding that this case is exceptional and an award to Plaintiff its attorney fees and costs as provided by for under 17 U.S.C. § 505.

g. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same

financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

h. Entry of an award of pre- and post-judgment interest on the judgment amount.

i. Entry of an order for any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED July 2, 2026

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No. 6313341
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*